**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
    sbogdanovich@bursor.com
    idiaz@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORUM HEALTH & PERSONAL CARE LLC, d/b/a LOLA and GOOGLE LLC<br><br>Defendants. | Case No. **'25CV2383 BEN DDL**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Jane Doe 1 and Jane Doe 2 (collectively "Plaintiffs") file this class action complaint on behalf of themselves and all others similarly situated (the "Class Members") against Defendant, Forum Health & Personal Care LLC, ("Lola") and Google LLC ("Google") (Lola and Google, collectively "Defendants"). Plaintiffs bring this action based upon personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through the investigation of their undersigned counsel.

## NATURE OF THE ACTION

1. This is a class action suit brought against Lola for breaching its customers' trust and allowing companies scattered around Silicon Valley to invade its customers' privacy through its website, mylola.com (the "Website"). In particular, Lola helped Google LLC ("Google"), collect and intercept customers' communications with Lola as consumers either searched for products on the Website by typing search terms into the search bar or adding particular items to their carts to purchase. This suit is also brought against Google for its interception of customers' communications with Lola in the same context.

2. Lola is a business specialized in providing "clean feminine care products," which include menstrual, vaginal, and sexual care products.[1] Given the highly personal and sensitive nature of Lola's business, consumer's communications with the Website are confidential.

3. Whichever tampons, condoms, or vibrators a person is looking to buy is no one else's business. Except for Google. As it turns out, the shopkeeper, Lola, has allowed Google to snoop on shopper's electronic communications through its Website. Using tracking tools, Lola has enabled Google to intercept whatever shoppers type into the site's search bar or whatever menstrual, vaginal, and sexual

---

[1] LOLA, ABOUT, https://mylola.com/pages/about.

wellness products these consumers browse for. All of this is done to help Lola with its marketing, advertising, and data analytics efforts and increase Defendants' profits.

4. The nature of Google's licensing agreement with Lola is such that Lola "aids, agrees with, employs, or conspires" to permit the Google to read, attempt to read, learn, and/or use the confidential communications of Website visitors without prior consent, thus violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a) and 632. Google in turn also violates CIPA §§ 631(a) and 632.

5. Plaintiffs bring this action individually and on behalf of all California residents who conducted searches for products on the Website while in California or browsed for products on the Website, and whose electronic communications were intercepted or recorded by Google. Lola has enabled Google to intercept visitors' communications by employing Google's services to track users across the Website. Further, Google has intercepted Lola's consumers' communications with Lola on the Website.

## THE PARTIES

*Plaintiffs*

6. Plaintiff Jane Doe 1 is an adult citizen of the state of California and resides in Oceanside, California.

7. Plaintiff Doe 1 has visited Lola's Website on several occasions since February 2023, including within the last year, while in California. *See* Figure 1.

**Figure 1**[2][3]

| 🌐 Organic Period Products \| LOLA | Monday, February 10, 2025 | https://mylola.com/collections/periods |

---

[2] Figure 1 displays a screenshot of Plaintiff Doe 1's browsing history confirming she in fact visited the Website in 2025.

[3] For avoidance of doubt, Figures 1 and 2 are included simply to show that Plaintiffs, did, in fact, visit the Website. Evidence showing that their actual communications on the Website were intercepted will need to be obtained through discovery. At the time Plaintiffs visited the Website, they were not aware that their communications were being intercepted, and so they had neither the foresight nor technical expertise to open their browser developer tools and collect the evidence themselves.

8. On the Website, Plaintiff searched for "tampon subscription" on the Website's search bar. Plaintiff Doe 1's communications with Lola – including the search terms she entered into the Website's search bar – were intercepted in transit by Google as enabled by Lola. Neither Lola nor Google procured Plaintiff Doe 1's prior consent to this interception on the Website. Plaintiff Doe 1 did not discover and could not have discovered this violation until her retention of counsel.

9. Plaintiff Doe 1 values her reproductive and sexual health privacy and wishes to proceed with this case anonymously. She fears that the public disclosure of her identity will subject her to harassment, ridicule, embarrassment, and potential retaliation.

10. Plaintiff Jane Doe 2 is an adult citizen of the state of California and resides in Los Angeles, California.

11. In February of 2025, Plaintiff Doe 2 visited Lola's Website while in California. *See* Figure 2.

**Figure 2[4]**



12. On the Website, Plaintiff Doe 2 searched for "organic tampons" on the Website's search bar. Plaintiff Doe 2's communications with Lola – including the search terms she entered into the Website's search bar – were intercepted in transit by Google as enabled by Lola. Neither Lola nor Google procured Plaintiff Doe 2's prior consent to this interception on the Website. Plaintiff Doe 2 did not discover and could not have discovered this violation until her retention of counsel.

---

[4] Figure 2 displays a screenshot of Plaintiff Doe 2's browsing history confirming she in fact visited the Website in February of 2025.

13. Plaintiff Doe 2 values her reproductive and sexual health privacy and wishes to proceed with this case anonymously. She fears that the public disclosure of her identity will subject her to harassment, ridicule, embarrassment, and potential retaliation.

***Defendants***

14. Defendant Forum Health & Personal Care LLC is a Delaware limited liability company with its principal place of business in New York, New York.

15. Defendant Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

17. The Court has general jurisdiction over Google because Google's principal place of business is in California and is thus at home in California.

18. The Court has personal jurisdiction over Lola because Lola has purposefully availed itself of the privilege of doing business in this state and Plaintiffs' harm are related to and arise out of Lola's contacts with this state. In particular, Lola has contracted with Google, a company headquartered in California, to enable interception of its California customers' communications on its Website, and to collect data from its California customers, including Plaintiffs, leading to the harms alleged throughout this Complaint.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because as substantial portion of the events giving rise to this action occurred in this District. In particular, Plaintiff Jane Doe 1 was located in this District when she visited the

Website Google intercepted her communications with Lola, as enabled by Lola, via the Website.

# FACTUAL ALLEGATIONS

## I. OVERVIEW OF GOOGLE'S TRACKING TOOLS

20. Lola has purposefully installed Google's tracking tools on its Website. Therefore, Lola has enabled Google to intercept Plaintiffs' and Class Members' communications by employing its tracking tools on its Website in the manner described throughout this Complaint. Further, Google has intercepted Plaintiffs' and Class Members' communications via its tracking tools as described throughout this Complaint.

21. Google offers a range of advertising software, one of which is called Google Analytics.

22. "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights" for businesses.[5] This is made possible by the Google Analytics software, a piece of code installed on a website that collects information on how website users interact with a business's website, such as "how many users bought an item ... by tracking whether they made it to the purchase-confirmation page."[6]

23. Google advertises this service can "[m]onitor activity on your site as it happens."[7]

24. Google's business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites with the Google Analytics software.

---

[5] GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=14089939&sjid=2827624563183915220-NC.

[6] *Id.*

[7] GOOGLE, THE FINER POINTS, https://marketingplatform.google.com/about/analytics/features/.

25. Thus, through websites that employ Google's services, Google directly receives the electronic communications of website visitors entered into websites via website features like search bars.

26. That information is then analyzed by Google before being provided to any entity that was a party to the conversation (like Lola). Upon information and belief, in order to analyze the intercepted communications, Google views the intercepted communications. As such, on information and belief, Google viewed Plaintiffs and Class Members' communications with Lola in order to provide advertising services to Lola.

27. Once Google intercepts website communications, it has the capability to use such information for its own purposes. "Google uses the information shared by sites and apps to deliver [] services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on [] partners' sites and apps."[8]

28. Google's range of software services is based on Google's ability to collect and analyze information about consumers' web behavior and deliver targeted advertising to select consumers based on their web habits. This involves collecting visitor information from thousands of websites and then analyzing that information in order to deliver targeted advertising and group web users so that they can be targeted for products and categories they are interested in.

29. Google views the contents of the communications it intercepts in order to engage in its analyzation of the data. Google states that once the Google Analytics code on a website "collects data, it packages that information up and sends it to

---

[8] GOOGLE, GOOGLE PRIVACY AND TERMS, https://policies.google.com/technologies/partner-sites.

Google Analytics to be processed into reports. When Google Analytics processes data, it aggregates and organizes the data based on particular criteria."[9]

30. Information from websites, like Lola's Website, is central to Google's ability to successfully market its advertising capabilities to future clients.

31. In sum, Google has the capability to use the communications it intercepts for own purposes other than simply providing a recording to its customers, including but not limited to (i) improving its own products and services; (ii) developing new Google for Business and Google Analytics products and services; and (iii) analyzing website visitors' communications to assist with and data analytics and targeted advertising.

## II. LOLA ENABLES GOOGLE'S INTECEPTION OF ITS WEBSITE USERS' COMMUNICATIONS AND GOOGLE INTERCEPTS USERS' COMMUNICATIONS

32. Lola has integrated Google Analytics into its Website. By integrating Google Analytics into its Website code, Lola has enabled Google to intercept Website users' communications with Lola as users search and browse for products without users' consent.

33. When a user conducts a search on the Website, communicating with Lola that they are interested in a particular product, because Lola installed Google Analytics on its Website, Google Analytics collects the URL for the page the user is accessing from the Website and therefore also intercepts the search terms the user typed into the Website's search bar – which are in the URL.
For example, when a user searches for "condoms" on the Website, Google Analytics intercepts this communication by collecting the URL of the web page which includes the exact search term the user communicated to Lola. *See* Figure 3.

---

[9] GOOGLE, *How Google Analytics Works*, https://support.google.com/analytics/answer/12159447?hl=en#.

**Figure 3**



34. Further, when a Website user decides to purchase an item, Google will know the name of the exact item added to the user's cart. As seen in Figure 4, when a Website user adds the "Mini Vibrator" item to their cart, Google obtains that information.

**Figure 4**



### III. SEARCH TERMS AND ITEMS ADDED TO SHOPPING CARTS ON THE WEBSITE ARE COMMUNICATIONS.

35. Users' search terms and items added to a shopping cart on Lola's Website are communications that are a product of users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are not procedurally or automatically generated).

36. The names of products users search for and add to their shopping carts on Lola's Website are personal information because they "divulge a user's personal interests, queries, and habits." *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 605 (9th Cir. 2020).

### VI. DEFENDANTS NEVER RECEIVED USERS' CONSENT TO GOOGLE'S INTERCEPTION OF USERS' COMMUNICATIONS

37. Lola allows Google to intercept users' confidential communications

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED          9

without obtaining users' consent. Google also does not obtain users' consent to intercept users' communications on the Website.

38. At no point during a person's use of the Website do Defendants inform users that Lola enables Google to intercept users' communications with Lola.

39. When a user searches for products on the Website or adds products to their shopping carts, Defendants do not provide users with any type of notice about its practice of allowing Google to intercept user communications with Lola.

40. Thus, Defendants never properly obtain consent from Website users to intercept or enable interception of their communications from the Website.

## CLASS ACTION ALLEGATIONS

41. Plaintiff Jane Doe 1 and Plaintiff Jane Doe 2 seek to represent a class of all California residents who entered information into Lola's Website, mylola.com, by conducting searches using the search bar on the Website and/or adding products to their shopping cart, while located in California (the "Class").

42. Plaintiffs reserve the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

43. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

44. Excluded from the Class are Lola; any affiliate, parent, or subsidiary of Lola; any entity in which Lola has a controlling interest; any officer director, or employee of Lola; any successor or assign of Lola; Google; any affiliate, parent, or subsidiary of Google; any entity in which Google has a controlling interest; any officer director, or employee of Google; any successor or assign of Google; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

45. **Numerosity.** Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiffs at this time; however, it is estimated that there are hundreds of thousands of individuals in the Class. Class Members can be readily identified from Defendants' records.

46. **Typicality.** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other members, visited Lola's Website and had their confidential electronic communications intercepted by Google, as enabled by Lola.

47. **Adequacy.** Plaintiffs are fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiffs are represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiffs' attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

48. **Common Questions of Law and Fact Predominate.** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendants have acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendants' wrongful conduct. Questions of law and fact common to the Class include, but are not limited to, the following: whether Defendants violated CIPA § 631 and/or § 632 and whether Plaintiffs and the proposed Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

49. **Superiority.** Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence,

effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in the management of this class action. Plaintiffs know of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### Violation Of The California Invasion of Privacy Act, Cal. Penal Code § 631

50. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

51. Plaintiffs bring this claim against Defendants individually and on behalf of the Class.

52. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a Plaintiffs need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is

>being sent from or received at any place within this state,
>
>Or
>
>Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
>Or
>
>Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

53. CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

54. Google's Google Analytics software is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

55. Google is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, Google had the capability to use the wiretapped information for its own purposes. Accordingly, Google was a third party to any communication between Plaintiffs and Class Members, on the one hand, and Lola, on the other. *Id*. at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

56. At all relevant times, Google willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to

1  read, and/or learned the contents or meaning of electronic communications of
2  Plaintiffs and Class Members, on the one hand, and Lola, on the other, while the
3  electronic communications were in transit or were being sent from or received at any
4  place within California.

5      57.    At all relevant times, Google used or attempted to use the
6  communications intercepted by its Google Analytics software, and/or other similar
7  Google software, to promote and improve their advertising platforms.

8      58.    At all relevant times, Lola aided, agreed with, employed, permitted, or
9  otherwise enabled Google to wiretap Plaintiffs and Class Members' communications
10 using the Google Analytics software and to accomplish the wrongful conduct at issue
11 here.

12     59.    Plaintiffs and Class Members did not provide their prior consent to
13 Google's intentional access, interception, reading, learning, recording, collection,
14 and usage of Plaintiffs' and Class Members' electronic communications. Nor did
15 Plaintiffs and Class Members provide their prior consent to Lola aiding, agreeing
16 with, employing, permitting, or otherwise enabling Google's conduct.

17     60.    The wiretapping of Plaintiffs and Class Members occurred in California,
18 where Plaintiffs and Class Members accessed the Website and where Google – as
19 enabled by Lola – routed Plaintiffs and Class Members' electronic communications
20 to its servers.

21     61.    Pursuant to Cal. Penal Code § 637.2, Plaintiffs and Class Members have
22 been injured by Lola's and Google's violations of CIPA § 631(a), and each seeks
23 statutory damages of $5,000 for each of Defendants' violations of CIPA § 631(a).

**COUNT II**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 632**

26     62.    Plaintiffs incorporate by reference the preceding paragraphs as if fully
27 set forth herein.
28

63. Plaintiffs bring this claim against Defendants individually and on behalf of the Class.

64. CIPA § 632(a) prohibits entities from:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

65. Google's Google Analytics software and/or similar software is "electronic amplifying or recording device[s]."

66. At all relevant times, the communications between Plaintiffs and Class Members on one hand, and Lola on the other, were confidential.

67. At all relevant times, Google intentionally used its Google Analytics software to eavesdrop upon and record such confidential communications.

68. When communicating with Lola, Plaintiffs and Class Members had an objectively reasonable expectation of privacy. Plaintiffs and Class Members did not reasonably expect anyone other than Lola to be a party to the communications, and did not expect that other, third-party entities, Google, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record their confidential communications.

69. Plaintiffs and Class Members did not consent to Google's actions. Nor have Plaintiffs and Class Members consented to Lola's intentional use of an electronic amplifying or record device to eavesdrop upon and record the confidential communications of Plaintiffs and Class Members.

70. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and Class Members have been injured by Defendants' violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendants' violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a) For an order certifying the putative Class, naming Plaintiffs as the representatives of the putative Class, and naming Plaintiffs' attorneys as Class Counsel to represent the putative Class Members;

(b) For an order declaring that the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the putative Class on all counts asserted herein;

(d) For statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiffs and the putative Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the proposed Class, demand a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: September 12, 2025        Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/      *Stefan Bogdanovich*
        Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
sbogdanovich@bursor.com
idiaz@bursor.com

*Attorneys for Plaintiff*