**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
sbogdanovich@bursor.com
idiaz@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FORUM HEALTH & PERSONAL CARE LLC, d/b/a LOLA and GOOGLE LLC,<br><br>Defendants. | Case No. 3:25-cv-02383-JES-VET<br><br>**OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 31-32)**<br><br>Date: February 25, 2026<br>Time: 10:00 a.m.<br>Courtroom: 4B<br>Judge: Hon. James E. Simmons, Jr. |

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs Have Standing And State A CIPA § 632 Claim Because Their Confidential Communications Were Disclosed .......... 2

B. Plaintiffs Sufficiently Allege A Violation Of CIPA § 631(a). .......... 8

1. Plaintiffs Sufficiently Allege Google's Violation Of Clause 2 .......... 8

2. Plaintiffs Sufficiently Allege Google's Violation of Clause 3 .......... 19

3. Plaintiffs Sufficiently Allege Forum Health's Violation of Clause 4. .......... 21

4. Forum Health's Argument That Plaintiffs Consented To Google's Activities Lacks Support, And Thus, Fails. .......... 23

5. Google Was Not A Party To The Communications. .......... 24

C. Plaintiffs State A Claim Under CIPA § 632. .......... 26

1. Plaintiffs Can State A CIPA § 632 Claim Against Forum Health. .......... 26

2. Plaintiffs Allege Google Acted Intentionally. .......... 27

3. Google's Software Qualifies As A "Device." .......... 28

III. CONCLUSION .......... 30

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ........ 5, 7

*Blumberger v. Tilley*,
115 F.4th 1113 (9th Cir. 2024)........ 30

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) ........ 4

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)........ 23, 24

*Camplisson v. Adidas America, Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 8

*Carpenter v. United States*,
585 U.S. 296 (2018) ........ 1

*Casillas v. Six Flags Ent. Corp.*,
2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ........ 21

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025)........ 24

*Cole v. Quest Diagnostics, Inc.*,
2025 WL 3172640 (3d Cir. Nov. 13, 2025)........ 25

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)........ 21

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024)........ 20

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........ 16, 17

*De la Cabada v. Ytel, Inc.*,
2020 WL 1156909 (N.D. Cal. Mar. 10, 2020)........ 24

*Doe v. Call-on Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 13, 17

*Doe v. Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 15, 18, 19

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 21

*Eisenstadt v. Baird*,
405 U.S. 438 (1972) .......... 4, 5

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 17

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 6

*Frasco v. Flo Health, Inc*,
2025 WL 1476905 (N.D. Cal. May 22, 2025) .......... 2, 19

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 7

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 2

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 5, 7, 8

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 29

*Griswold v. Connecticut*,
381 U.S. 479 (1965) .......... 1, 3, 4

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) .......... 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 16

*Heaven v. Prime Hydration LLC*,
761 F. Supp. 3d 812 (E.D. Pa. 2025) .......... 4

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024)....................11, 13, 17

*In re Carrier IQ, Inc.*,
78 F.Supp.3d 1051 (N.D. Cal. 2015) ....................12, 28, 29

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................passim

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................23

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................23

*In re Jennings*,
34 Cal. 4th 254 (2004)....................30

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................24

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024)....................14

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ....................14

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)....................12

*JustM2J LLC v. Brewer*,
2025 WL 3208815 (E.D. Cal. Nov. 17, 2025)....................28

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006)....................26

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....................11, 12, 13

*L.B. v. LinkedIn Corp.*,
2025 WL 2782588 (N.D. Cal. Sept. 30, 2025) ....................15

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)....................27, 28

*Lee v. Sec. Life of Denver Ins. Co.*,
2025 WL 2964013 (C.D. Cal. Sept. 22, 2025)....................4

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024)....................28

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)....................17

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)....................6

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)....................28

*People v. Aguilar*,
16 Cal. 4th 1023 (1997)....................17

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....................3, 4, 5

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)....................7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....................passim

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)....................14, 15, 16, 19

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024)....................4, 27

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)....................passim

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)....................22

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................20, 21

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025)....................21, 28, 29

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 4, 7

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 2, 3

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 26

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 26

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 26

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 6

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 28

**STATUTES**

Cal. Pen. Code § 630 .......... 30

Cal. Pen. Code § 631(a) .......... passim

Cal. Pen. Code § 632 .......... 2, 4, 6, 29

Cal. Pen. Code § 635.51 .......... 30

Cal. Pen. Code § 638.50 .......... 30

## I. INTRODUCTION

Forum Health operates a website called mylola.com, which sells "menstrual, vaginal, and sexual care products." First Amended Complaint, ¶ 2. Forum Health installed a Google Analytics tracking code on its Website to allow Google to simultaneously collect whatever searches shoppers ran on the website, or whatever products they added to their cart—be it "tampons, condoms, or vibrators." *Id.* ¶ 3. This invades some of the oldest and most fundamental privacy rights this nation has recognized. In *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965), the court held that "allow[ing] the police to search… for telltale signs of the use of contraceptives… is repulsive to [our] notions of privacy." This is a "right of privacy older than the Bill of Rights" which should "not [be sacrificed for] commercial or social projects." *Id*. And yet today, Forum Health has allowed Google to intercept Plaintiffs' confidential communication with the mylola.com site to profile American consumers and send them targeted ads. FAC ¶¶ 3, 34, 35, 41, 44.

Google laments that "[t]his is another pixel case." Google MTD at 1. But the fact that today's privacy invasions occur through tracking pixels on websites rather than by men in dark trench coats does not makes them less, but more, severe. Electronic devices "provide[] an intimate window into a person's life, revealing … his 'familial … religious, and sexual associations.'" *Carpenter v. United States*, 585 U.S. 296, 311 (2018). And these pixels allow for "tracking [that] is remarkably easy, cheap, and efficient compared to traditional investigative tools. With just the click of a button, the [companies] can access [a] deep repository of historical [ ] information at practically no expense." *Id*. Defendants also compare the sale of feminine health and sexual care products to "toilet paper." Forum MTD at 14; Google MTD at 6. This is not well-taken. The purchase of or browsing for tampons reveals intimate personal details—*i.e.*, that a woman menstruates, that she is of menstruating age, that she is not using a type of birth control that stops menstruation, that she is not pregnant, and that she may be capable of becoming pregnant. The purchase of condoms reveals that she

is sexually active; the purchase of vibrators reveals that she may not be. Toilet paper reveals that a person has an anus—a biologically universal fact. Qualitatively, these are not the same. Indeed, a motivating reason why consumers visit Forum Health's Website and wait days to have their tampons, condoms, and vibrators shipped to their homes—in lieu of a picking them up from a convenient CVS store—is presumably because *they don't want to be watched*.

Plaintiffs brought claims under Sections 631 and 632 of the California Invasion of Privacy Act against both Defendants. Defendants' motions seeking to dismiss these claims ignore relevant caselaw, ignore or mischaracterize the FAC's allegations, and prematurely raise questions of fact. Another court already denied summary judgment on a CIPA claim against Google for its tracking of data on menstrual cycle app because "[d]isputes of fact," abounded. *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *4 (N.D. Cal. Sept. 23, 2024) ("*Frasco I*"); *accord*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) ("*Frasco III*") (denying menstrual app's summary judgment motion in same case). This case presents many of the same issues of fact, and Defendants' motions should be denied.

## II. ARGUMENT

### A. Plaintiffs Have Standing And State A CIPA § 632 Claim Because Their Confidential Communications Were Disclosed.

Google argues Plaintiffs lack standing and do not state a CIPA § 632 claim. Google MTD at 5 and 22. Both arguments fail because Plaintiffs' searches on Forum Health's Website are confidential. CIPA makes it unlawful to "use[] an electronic amplifying or recording device to … record the *confidential communication*" "intentionally and without the consent of all parties." Cal. Penal Code § 632 (emphasis added). Likewise, the Supreme Court recognizes that the "disclosure of *private information*, and intrusion upon seclusion," "are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and confer Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Those "traditional harms may also include harms specified by the Constitution itself," *id.*, such as an individual's fundamental right to privacy, *Griswold*, 381 U.S. at 486. Indeed, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). That said, these torts and constitutional cases serve only as guideposts and "an exact duplicate is not required." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

Here, Plaintiffs allege they used Forum Health's Website, which specializes in "menstrual, vaginal, and sexual care products[,]" such as "tampons, condoms, and vibrators." FAC ¶¶ 2-3. When Plaintiffs engaged counsel, they were asked to submit proof of their claims, and they took screenshots of their browsing history, which were attached as Figures 1 and 2 of the FAC. *See id.* ¶¶ 7 and 13. However, "Figures 1 and 2 are included simply to show that Plaintiffs, did, in fact, visit the Website," and are by no means an exhaustive list of all their communications. *Id.*, ¶ 7, n.3. Plaintiffs allege visiting "*on several occasions* since February 2023." *Id.* ¶ 7 (emphasis added). However, "[a]t the time Plaintiffs visited the Website, [and long before they ever retained counsel[1]] they were not aware that their communications were being intercepted, and so they had neither the foresight nor technical expertise to open their browser developer tools and collect the evidence themselves." *Id.*, ¶ 7, n.3.

Plaintiffs alleged that Forum Health enabled Google to collect not only which searches or "menstrual, vaginal, and sexual care products," they purchased on the mylola.com website, but also data that *personally identified* them as the individuals that made those searches or purchased those products (through _ga cookie identifier and browser fingerprinting identifiers[2]). FAC ¶¶ 36, 37, 45, 51-54.

---

[1] Contrary to Defendants' accusations that "Plaintiffs [may be] 'testers,' rather than actual consumers," *see* Forum MTD at 1, n.2, *see also* Google MTD at 8, n.4, Plaintiffs visited the site *before* engaging counsel.

[2] Google also incorrectly argues that "Plaintiffs allege that Google only began deploying browser fingerprinting as a general practice after they allegedly searched for tampons on Lola's website." Google MTD at 7 (referencing Figures 1 and 2 of the FAC). But as Plaintiffs explain herein, Figures 1 and 2 do not illustrate the dates on

"Whichever tampons, condoms, or vibrators a person is looking to buy is no one else's business." FAC ¶ 3. "Given the highly personal and sensitive nature of Lola's business, [a] consumer's communications with the Website are confidential." *Id.* ¶ 2. As such, "[w]hen communicating with Lola, Plaintiffs and Class Members had an objectively reasonable expectation of privacy." *Id.* ¶ 82. Courts have long recognized that an individual's use of feminine care and sexual health products is private. *See Griswold*, 381 U.S. at 486; *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972). These allegations are sufficient to plead confidential communications and a concrete Article III injury, as numerous courts have held in similar cases.

Google claims there is a "presumption" "that Internet-based communications are not 'confidential' within the meaning of [s]ection 632." Google MTD at 23. This is flatly false. *Multiple* courts have denied Google's prior motions to dismiss section 632 claims. "California courts have *never* recognized a legal 'presumption' that internet communications are not confidential under Section 632." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (emphasis added) (quoting *Brown v. Google LLC*, 685 F.Supp.3d 909, 938 (N.D. Cal. 2023)).

Citing cases involving pet food, pizza, and energy drinks,[3] Google argues that "'product preference information is not personal information' in which Plaintiffs would have a reasonable expectation of privacy because it would be plainly observable if they shopped in the physical world." Google MTD at 9. Not so. As another court recently recognized, the "products placed in [a consumer's] cart… 'may reveal, for

which they conducted their searches. FAC ¶ 7, n.3. Thus, Google's argument fails. Further, whether Google obtained Plaintiffs' identifying information is a question for future stages. *See Lee v. Sec. Life of Denver Ins. Co.*, 2025 WL 2964013, at *3 (C.D. Cal. Sept. 22, 2025) ("Plaintiff is not required to prove his claims at this stage.").

[3] *See Popa*, 153 F.4th at 791; *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024); *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 819 (E.D. Pa. 2025).

instance, a consumer's religious affiliation, sexual orientation, medical condition.'" *Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025).

Indeed, that is precisely the case here. A consumer searching for or placing tampons, condoms, or vibrators into their carts on mylola.com may reveal a trove of information about their health, use of certain contraceptive drugs, or sexual activity. *Accord Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *2 (N.D. Cal. Aug. 29, 2025) ("Haleon's websites involve healthcare [products like cold sore medicine or toothpaste], and *Popa* challenged a pet food supply website's tracking practices. Whatever information users' input into Haleon's website is likely more sensitive than what the plaintiffs in *Popa* inputted into those websites.") Moreover, the very fact such items are purchased online in lieu of a physical store indicates users would have a reasonable expectation of privacy. In contrast to the cases involving pet food, pizza, and energy drinks that Google relies on, here, the tampons, condoms, and vibrators for sale on mylola.com are exactly the kinds of products a person might be embarrassed to bring down a shopping aisle for onlookers to see.

Defendants also ignore the *additional* inferences that can be drawn from the interception of data *at scale*. Plaintiffs allege Google intercepts *any and every* "search term[]" entered into a "search bar" or any particular item added to carts. FAC ¶ 1. But if Google discovers a particular person that purchased tampons and condoms from Forum Health each month suddenly *discontinues her purchases*—not only from Forum Health's website, but anywhere on the web—Google can infer that person's "decision whether to bear or beget a child." *Eisenstadt*, 405 U.S. at 453. And make no mistake: that *is* Google's stated goal. "Google uses the information shared by sites to… personalize content and ads." FAC ¶ 33. And so that person may well start receiving ads about baby cribs and toys before they even tell their family.

What is more, unlike many other states, California recently enacted the California *Consumer* Privacy Act (CCPA). The "CCPA requires that companies give users the choice to *opt out* of any collection of personal information for 'cross-context

behavioral advertising." *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *4 (N.D. Cal. Dec. 17, 2025) (emphasis added). As such, "[w]hen evaluating Californians' reasonable privacy expectations, the CCPA's provisions are highly relevant 'customs, practices, and circumstances,' because they provide Californians with the reasonable expectation that they will have some control over their data and necessarily shape users' expectations about their ability to opt out of websites' collection of data for profit." *Id.* (citing *In re Facebook*, 956 F.3d at 602). As such, many of the other Pennsylvania cases Google relies on, along with "[c]ases decided *prior* to the 2020 adoption of the CCPA are thus of limited value in considering users' reasonable *post*-enactment expectations." *Wiley*, 2025 WL 3654085, at *4. "Today, when California users visit a website, they can expect to see a popup screen giving them the option to *opt out of various types of tracking*." *Id*. (emphasis added).

Here however, Plaintiffs allege that Forum Health did *not* provide them *any* notice of "its practice of allowing Google to intercept user communications," FAC ¶ 53—let alone even give them "the option to *opt out*." *Wiley*, 2025 WL 3654085, at *4. So—even setting aside the sensitive products at issue here—the fact that Californians had never been notified or given the option to opt out of any tracking would have given them the impression *that they were not being tracked*. And "a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation *is not being … recorded*." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002) (emphasis added). So even if Plaintiffs were *simply shopping for shoes* online, they would *still* have a "reasonable expectation of privacy," if a website's "privacy policy … can be read to promise that third parties would not intercept" such browsing. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (denying motion to dismiss § 632 claim).

Whether a communication is confidential is a "question better-assessed at a later stage of the litigation." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, *11 (C.D. Cal. Oct. 4, 2024) (denying motion to dismiss CIPA claim based on hotel

booking information online); *accord Rack Room Shoes*, 2025 WL 1085169, at *5. Indeed, the *Papa Johns* pizza case Google relies on qualified its opinion by noting: "[t]his is not to say there can never be a reasonable expectation of privacy over internet activity," and went on collect several cases where courts held consumers had a reasonable expectation of privacy online. *Thomas*, 2024 WL 2060140, at *2. As another court summarized: "Courts regularly refuse to decide at the pleading stage whether information … meets the bar for 'personal or sensitive' information under CIPA. Moreover, this argument is intertwined with the merits, and courts cannot resolve 'jurisdictional questions [that] are intertwined with the merits of a claim.'" *Gabrielli*, 2025 WL 2494368, at *6, n.5 (cleaned up); *see also R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *4 (N.D. Cal. Mar. 28, 2025) (same).

As to Article III standing, the court in *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) ("*Frasco II*") held that a class of users of a menstrual cycle tracking app showed a concrete injury-in-fact where plaintiffs alleged that Meta and Google collected "records of user-app interactions" thereby divulging "personal health information." *Id.* at 570, 579. Plaintiffs' allegations that their "highly personal health information was disclosed" without consent were sufficiently concrete. *Id.* at 580. Similarly, in *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *2, *6-7, a plaintiff sufficiently alleged a concrete harm where a defendant allowed third parties to collect "user input data," including "search queries" names, emails, addresses, and the like, from websites for health-related retail products (like vitamins and toothpaste). The court found allegations that the defendant deprived the plaintiff of "control of personal information regarding his digital activity and profile [were] enough to show a concrete injury[.]" *Id*. at *6. And in *Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *1, another court held plaintiffs alleged a concrete harm where the "search terms input to the app, products placed in their cart, and other … products they viewed—was collected." "Plaintiffs allege that the collection of this data 'may reveal, for instance, a consumer's religious affiliation, sexual orientation, medical condition.'" *Id.*

Indeed, another court in this district recently held that even the collection of data on a shoe retailers' website was sufficient for Article III standing. *See Camplisson v. Adidas America, Inc.*, --- F. Supp. 3d ----, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025). In *Camplisson*, plaintiffs alleged that the defendant used trackers on its apparel website to collect their emails and other device data. *Id.* at *1. The court found allegations that the defendant collected "a broad set of their personal identifying and addressing information without [their] consent" maintained "a violation of privacy, particularly in the control of their own information" and thus, the injury was concrete. *Id*. at *6.

Plaintiffs' menstrual product communications are far more sensitive than the usage data collected on apparel websites in *Camplisson*, 2025 WL 3228949, at *1 and the vitamin and toothpaste products in *Gabrielli*, 2025 WL 2494368, at *2. If the courts in those cases held there was standing, then surely there is standing here.

**B. Plaintiffs Sufficiently Allege A Violation Of CIPA § 631(a).**

Plaintiffs advance a claim against Google under CIPA § 631(a), Clauses 2 and 3, alleging: (1) "Google willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiffs and Class Members, … while the electronic communications were in transit"; and (2) "Google used or attempted to use the communications intercepted by its Google Analytics software, … to promote and improve their advertising platforms." FAC ¶¶ 70-71. Plaintiffs also advance a claim against Forum Health under Clause 4, alleging: "Lola aided, agreed with, employed, permitted, or otherwise enabled Google to wiretap Plaintiffs and Class Members' communications using the Google Analytics." *Id.* ¶ 72.

***1. Plaintiffs Sufficiently Allege Google's Violation Of Clause 2.***

Clause two of CIPA § 631(a) imposes liability on anyone who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, *reads, or attempts to read, or to learn the contents … of any …*

*communication* while the same is in transit." Plaintiffs allege Google has done so.

Plaintiffs' Plausibly Allege Real-Time Interception of Their Search Terms.

Defendants next argue that Plaintiffs failed to plausibly allege their communications were intercepted in transit. Google MTD at 14; Forum MTD at 9. Not so. Plaintiffs allege:

> When [a user's] search is made, the individual's browser sends a GET request to Lola's server requesting that server to load the particular webpage. Google's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. Google causes the browser to simultaneously, contemporaneously and covertly duplicate the communication with Lola, transmitting it to Google's servers, alongside additional information that transcribes the communication's content and the individual's identity. The data transmissions described herein occur concurrently with each user's activity, enabling Google to intercept sensitive data as it is generated. In other words, Google's interception of users' communications on the Website occurs "in transit."

FAC ¶ 31.

Forum Health misreads this paragraph and creates an illustration of what it thinks is occurring, *see* Forum MTD at 3, but gets the chronology wrong. When a user makes a search or interacts with a webpage, there isn't a single data transmission that is sent, but *hundreds or thousands*. In Figure 4 of the FAC, for example, depicts the data transmission sent to Google Analytics that occurs "when a user searches for 'condoms' on the Website." FAC ¶ 47.



But if we zoom into this image, we can see there are at least *834 different transmissions* that occur *as the page is loading*. *See id.* (zoomed in).




The transmission to Google Analytics is but one of many. The time bar at the top with blue hashes shows numerous other transmissions being sent and received "simultaneously [and] contemporaneously"—some finishing milliseconds before and others finishing milliseconds after. FAC ¶ 31. As this screenshot shows, the transmission to Google Analytics "occur[s] concurrently with each user's activity, enabling Google to intercept sensitive data as it is generated." *Id.* And this makes sense. As anyone who has ever experienced a slow internet connection knows, webpages do not load all at once. They load in stages.

Nor does Forum Health's attempt to atomize internet communication into singular, discrete packets of data find any support in the text of § 631(a). The law's text asks whether the "*contents* [plural]… of *any* … communication" is intercepted. Cal. Penal Code § 631(a). As this pluralistic text makes clear, a communication must have more than one piece of content.

The plain meaning of the word "Communication" supports this reading.

Communication is defined as "[t]he interchange of *messages* [plural] by speech, writing, gestures, or conduct." *Communication*, Black's Law Dictionary, def. 1(a) (12th Ed. 2024) (emphasis added); *see also id*., at def. 2 ("The *messages* [plural] or *ideas* [plural] so expressed or exchanged."). As these legal definitions further confirm a "communication" is not a single, discrete packet of data. Rather, a "communication" encompasses all the "messages or ideas so expressed and exchanged," while a person is interacting on a particular website.

In the wiretapping context, a communication is not limited to a single, guttural sound emitted from a person's vocal cord, but can include everything that is communicated during an "*ongoing* telephone conversation." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877 (9th Cir. 2002). In other words, if the telephone call lasts 10 minutes, the entire 10-minute call qualifies as a "communication," and the person is wiretapped if at any point during the call, a third-party listens in. The same is true online. If a user visits Forum Health's Website for 10 minutes, searches for tampons in the search bar, ads them to her cart, and purchases them, that entire 10-minute session is the "communication." And taken together, this communication would "divulge a user's personal *interests* [plural], *queries* [plural], and *habits* [plural]." *See In re Facebook*, 956 F.3d at 605 (emphasis added).

<u>Plaintiffs' Searches Were Duplicated On Their Browsers, Not On Servers.</u>

The Ninth Circuit has held that "for a [message] … to be 'intercepted' … it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). This means a message cannot be intercepted if it is first sent to a third-party server for "en route storage of electronic communications." *Id.*, at 880, n.6. Courts applying *Konop* have held that messages *are intercepted* where they are *simultaneously duplicated* from a *user's browser*, *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 854 (C.D. Cal. 2024), whereas messages *are not intercepted* if they are routed directly to a third-party

server—thereby becoming stored—and later replicated on that third-party's server, *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024).

Google tries to analogize this case to this Court's decision in *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1036-37 (S.D. Cal. 2024), but that case is readily distinguishable. *Jones* did not involve a website directing a user's browser to simultaneously duplicate messages sent to the website to a third-party. FAC ¶ 31. Rather, *Jones* involved users communicating to a website's chat feature. 751 F. Supp. 3d at 1036. Unlike in this case, where Plaintiffs were directly typing in search terms with mylola.com, *see* FAC ¶ 31, in *Jones*, a third-party "Drift[,] runs the chat service," and so "Drift API 'directs [chat] communications to be routed *directly to Drift*," 751 F. Supp. 3d at 1036-37 (emphasis added). As such, the third-party itself was "destination server." *Id*. at 1036 (quoting *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1077-1078 (N.D. Cal. 2015)). And the so the subsequent "transcripts [we]re retrieved and created *after transmission from* '*the* [third-party's] *server*.'" *Id*. at 1037 (emphasis added). Likewise, in *Konop v. Hawaiian Airlines, Inc.*, the decision on which this Court relied, involved "*a request to the server to make* an electronic copy of the website." 302 F.3d at 875 (emphasis added).

Here, however, Plaintiffs are *not* alleging their search terms were *recreated on a server*. Rather, "Google causes the [website user's] *browser* to simultaneously, contemporaneously and covertly duplicate the communication with Lola." FAC ¶ 31. This is dispositive, because it means the messages are *never* sent to a third-party server for "en route storage of electronic communications," for duplication. *Konop*, 302 F.3d at 880, n.6.[4] Defendants arguments to the contrary only seek to confuse the issues. Plaintiffs never allege that a server replicated any messages, only that" Lola's server

[4] Defendants proffer additional cases in support of their arguments that Plaintiffs' communications were not read, learned, and intercepted while in transit. *See* Google MTD at 14-15, 17-18; LOLA MTD at 9. But these cases are distinguishable because they involve different technologies, and thus, different in transit analysis, or did not allege simultaneous and contemporaneous interception.

… sends secret instructions back to the individual's browser" *for the browser to duplicate the messages*. FAC ¶ 31. And this all occurs in the middle of a stream of 834 concurrent transmissions which load the relevant page. *Id*. ¶ 47, fig. 4.

Other courts, following *Konop*, have held identical allegations involving Google were sufficient to allege interception. For example, in *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 854 (C.D. Cal. 2024), the court held that there was plausible interception in transit, where, as here, "Plaintiffs… allege their Search Terms were simultaneously fed to … Google." These allegations sufficiently alleged the communications were "acquired during transmission, not while it is in electronic storage." *Id*. at 862 (quoting *Konop*, 302 F.3d at 878). Likewise, in *Doe v. Call-on Doc, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025), another court held a plaintiff "plausibly alleged that her communications were intercepted while 'in transit,'" by alleging that "when Plaintiff selected a medical condition and entered her PII and PHI into Defendant's website, Google Analytics' tracking code … sent a simultaneous transmission of her information to Google."

A web *browser* is the internet analog of the telephone—*i.e.*, the device through which a user's computer communicates with others. And Google's commandeering of Plaintiffs' web browsers' is exactly the kind of "simultaneous dissemination [of messages] to an unannounced second auditor, [through a] mechanical device" that the California Supreme Court held would give rise to a § 631(a) violation. *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985). By commanding *a user's browser* to send a second, concurrent message while a webpage is loading, Google acts just like the "secretary [that] secretly transcribe[s] a conversation *over an extension*" which *Ribas* held would be liable under section 631(a). *Id*. at 361 (emphasis added).

<u>Plaintiffs sufficiently allege Google read or learned the contents of their communications.</u>

Google claims "Plaintiffs plead no specific facts demonstrating that Google attempted to 'read, or to learn the contents' of any purported communications." Google

MTD at 11. However, as an initial matter, Plaintiffs are under no obligation to "plead [] *specific facts* demonstrating Google attempted to 'read, or to learn the contents' of [] communications." Plaintiffs' CIPA claims are not subject to Rule 9(b)'s heightened pleading requirements. "Rule 8's 'short and plain statement' requirement requires only 'sufficient detail to put the defendants on notice of the claims.'" *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *5 (N.D. Ill. Oct. 1, 2024) (denying motion to dismiss CIPA claim and noting the law does not require "Plaintiffs to provide detailed facts about the time and circumstances of their injury at the pleading stage.")

Second, Google's argument entirely ignores "a plethora of allegations that [it] read and used the data it acquired from [the Website] for its own marketing services." *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024). The FAC devotes a baker's dozen paragraphs which "[i]llustrate[] how Google Analytics works." FAC ¶ 31; *see id.* ¶¶ 31-44. The Google Analytics tracking code "collect[s] visitor information from thousands of websites and then analyz[es] that information in order to deliver targeted advertising and group users." *Id.* ¶ 34. "Google states that once the Google Analytics code on a website 'collects data, it packages that information up and sends it to Google Analytics to be processed into reports. When Google Analytics processes data, it aggregates and organizes the data based on particular criteria.'" *Id.* ¶ 43 (quoting Defendant Google's *How Google Analytics Works* article). These allegations suffice. *See Jackson*, 744 F. Supp. 3d at 994.

Google claims that its admitted "organiz[ation] [of] data" is somehow distinct from reading or learning. Google MTD at 12. But for Google to "organize[] the data based on particular criteria"—something it admits it does—it necessarily needs to acquire some basic knowledge of *what* the data *is*. And that can only be accomplished by "read[ing], or attempt[ing] to read, or to learn" the data. Cal. Penal Code § 631(a). *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025) is on all fours on this point. There the court held that "alleg[ations] that [Defendant] uses 'event listeners' to detect specific types of contents," and "'connects all these

identifying points of data into a single, non-anonymous 'identity profile'" was sufficient to "set forth a specific factual theory as to how [defendant] incorporates—and thus reads—the intercepted content." *Id*. The same is true here.

Indeed, the California Supreme Court "ha[s] read section 631 as prohibiting far more than illicit wiretapping," but also the "simultaneous *dissemination* [of information] to an unannounced second auditor, whether that auditor be a person *or mechanical device*." *Ribas*, 38 Cal. 3d at 360–61 (emphasis added). "[I]t is probable that the Legislature viewed section 631" as prohibiting relatively rote interceptions, such as "requesting a secretary to secretly transcribe a conversation over an extension." *Id*. at 361. Google counters that organizing communications "can't fairly be characterized as an effort at understanding the meaning of the communication." Google MTD at 13 (citing *Doe v. Eating Recovery Center LLC*, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025) and *L.B. v. LinkedIn Corp.*, 2025 WL 2782588, *16 (N.D. Cal. Sept. 30, 2025)). Plaintiff disagrees. If a librarian sorts books into dramas, comedies, and thrillers, then she has necessarily taken some "effort at understanding the meaning of the communication." That the librarian is a "mechanical device" as opposed to a human is beside the point. *Ribas*, 38 Cal. 3d at 361.

What is more, the FAC alleges Google has gone above and beyond "secretly transcrib[ing] a conversation over an extension." *Ribas*, 38 Cal. 3d at 361. The FAC, again quoting Google's own words, goes on to note that "Google uses the information shared by sites and apps to … personalize content and ads." FAC ¶ 32 (quoting Google's *Privacy and Terms* article). Again, the act of sending Plaintiffs "personalized content and ads" necessarily requires taking steps to "understand[] the meaning of [Plaintiffs'] communication" with Forum Health. For example, if Google starts sending user A ads for iron supplements shortly after she purchased organic tampons, or starts sending user B ads for romantic dinner restaurants after he purchased condoms, then Google has clearly taken steps to "understanding the meaning of the communication." *Eating Recovery*, 2025 WL 2971090, at *5.

As these hypotheticals illustrate, "whether communications are 'read' [by machines] … is a fact-intensive question that depends on how the challenged technology and processes actually work—a question [other courts have] decided only after a full evidentiary record at summary judgment." *Riganian*, 791 F. Supp. 3d at 1092. At this stage, Plaintiffs are "not expected to prove or even know how" the contents of the communications are read, viewed, or learned. *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game" given the "relevant information about data capture typically resides uniquely" with the Defendants. *See D'Angelo*, 2023 WL 7006793, at *8.

Lastly, Google's argument that personally identifying users based on the _ga cookie and fingerprinting does not "equate to reading of the ***contents*** of the correspondence," Google MTD at 12-13 (emphasis in original), misses the mark, because Plaintiffs are *not* alleging mere identification information. Rather, they allege "URLs in the instant case could emanate from search terms inputted" into the search bar and thus qualify as "contents." *In re Facebook*, 956 F.3d 589, 605. And as other courts have held, identifying information, "may be contents *when it is part of the substance of the message conveyed to the recipient*." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) (emphasis added). And here it is. Google did not learn Plaintiffs' _ga cookie and browser fingerprinting data in a vacuum. Rather, Google learned that Plaintiffs—*and not some anonymous internet users*—typed specific search terms on Forum Health's website. FAC ¶¶ 8, 14, 45.

<u>Plaintiffs need not allege their communications were read and learned in transit.</u>

Google next argues that "Plaintiffs do not allege that any reading or learning occurred ***contemporaneously*** while the challenged information was in transit." Google MTD at 16 (emphasis in original). But neither the text of the statute, nor the California Supreme Court's interpretation of it, have ever imposed such a requirement. To the contrary, the *Ribas v. Clark* court has held that "simultaneous *dissemination* to

an unannounced second auditor, *whether that auditor be a person or mechanical device*," is sufficient. 38 Cal. 3d at 360. As such, courts have interpreted the provision as being violated, where, as here, "Plaintiffs… allege their Search Terms were simultaneously fed to … Google." *Heerde*, 741 F. Supp. 3d at 854; *accord Call-on Doc*, 2025 WL 1677632, at *12 (Plaintiff "plausibly alleged that her communications were intercepted while 'in transit,'" by alleging that "when Plaintiff selected a medical condition and entered her PII and PHI into Defendant's website, Google Analytics' tracking code … sent a simultaneous transmission of her information to Google.") Numerous courts in this district agree.[5]

Worse still, Google's interpretation reads the phrase "attempts to read" out of § 631(a). The relevant passage imposes liability on a person who, without consent, "[1] reads, or [2] *attempts to read*, or … [3] learn[s] the contents or meaning of any message, report, or communication while the same is in transit." Cal. Penal Code § 631(a) (emphasis added). The phrase "attempts to reads" must hold some meaning independent from the words "read[]" or "learn." This is because, in interpreting California criminal statutes, "[w]e … generally avoid a reading that renders any part of a statute superfluous." *People v. Aguilar*, 16 Cal. 4th 1023, 1030 (1997).

And implicit in Defendants' arguments is the notion that a "communication" is a single snippet of data sent from the Website to Plaintiffs' browsers. Yet neither the plain meaning of the word, nor text, nor the legislative history of CIPA support such a narrow reading. As noted, the "Communication" is defined as "[t]he interchange of *messages* [plural]" and the statute covers the plural "contents" of any communication.

[5] *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (allegations that software "may simultaneously collect a transcript of that chat… and save it for later access,'… are sufficient to plead the 'in transit' requirement."); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (allegations that "Plaintiff's communications were intercepted 'in real time through the use of computer code', … supports the 'in transit' requirement."); *D'Angelo*, 2023 WL 7006793, at *8 (same).

Indeed, Google and Forum Health's atomistic interpretation of "communication" is not only unnatural; but it would legalize the very same conduct that CIPA was enacted to stop. "CIPA was enacted in 1967 to address the increasing use of wiretapping to eavesdrop on private phone conversations." *Eating*, 2025 WL 2971090, at *3. But when a human taps into someone's phone conversation, it is physically impossible for him to mentally process what is being said during the time a communication "is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). Even back in 1967, phone communications traveling across copper wires moved at near the speed of light. Our human bodies, by comparison, are woefully slow. We listen at the speed of sound and even the most quick-witted among us can only process text or sound in tenths of a second. By the time we realize what is said, a message travelling at near the speed of light would have already made several laps around the earth. Perhaps recognizing this, many courts have rejected Defendants' reading, and held that "merely intercepting the communication while it's being made is enough," as long as it happens simultaneously or near-simultaneously." *Eating Recovery*, 2025 WL 2971090, at *5 (collecting cases).

That is the better reading under almost every canon of statutory interpretation. It tracks CIPA's plural text, follows the plain meaning of the word "communication," avoids reading the phrase "attempts to read" out of the statute, and avoids the absurd consequence of having human wiretappers absolved of liability simply because their brains are too slow to process the sounds they hear. Defendants' reading, by contrast, is only supported by the rule of lenity. But if a human that "willfully and without the consent" of all parties tapped into others' private phone conversation, would the rule of lenity require a court to read the statute as requiring the human wiretapper to read and learn contents at the speed of light? Plaintiffs' counsel thinks not.

And there is *zero* legal basis to treat humans different from machines under CIPA. To the contrary, the California Supreme Court "ha[s] read section 631 as

prohibiting" the "simultaneous dissemination [of information] to an unannounced second auditor, *whether that auditor be a person or mechanical device.*" *Ribas*, 38 Cal. 3d 355, 360–61 (emphasis added). That is exactly what occurred here.

Defendants' reading and learning arguments prematurely raise questions of fact.

It also bears noting that many of the cases Google and Forum Health rely on were decided at summary judgment. *See, e.g.*, *Eating*, 2025 WL 2971090, at *6; *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025); *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024). One court even measured the milliseconds of transmissions to determine *what* happened *when*. *Eating Recovery*, 2025 WL 2971090, at *5 ("event data is transmitted to Meta about 0.2 seconds after the visitor's action is transmitted to the website."). They feature different types of technologies configured in different ways on different sites. Notably, the *Frasco* court, denied summary judgment on the issue of "whether Meta's interception occurred while the communications were 'in transit,'" because the Meta Pixel was configured in a different way on a different site. *Frasco III*, 2025 WL 1476905, at *1.

In denying a motion to dismiss, the *Riganian* court made this same observation: "As *Torres* itself illustrates, … whether communications are 'read' in transit or only after storage is a fact-intensive question … decided only after a full evidentiary record at summary judgment." 791 F. Supp. 3d at 1092. As such, defendant's arguments were premature. *Id*. The same concerns ring true here. No discovery has been done, nor does anything on the face of the FAC conclusively establish *when* Forum Health's webpage finished loading or Google's analysis of data occurred.

***2. Plaintiffs Sufficiently Allege Google's Violation of Clause 3.***

Because Plaintiffs sufficiently allege Google violated Clause 2 of CIPA, they also state a Clause 3 claim against Google, contrary to Defendants arguments, Forum MTD at 7, 9-10, Google MTD at 18.

Google separately argues that Plaintiffs' Clause 3 claim fails because Plaintiffs "plead no facts plausibly alleging that Google used the challenged data." Google MTD

at 18. Not so—as noted previously, the FAC quotes Google own's policies which say "Google uses the information shared by sites and apps to … personalize content and ads." FAC ¶ 32 (quoting Google's *Privacy and Terms* article).

Google's argument that "there are ***no*** allegations specific to data from Lola's website, let alone tethered to the named plaintiffs," Google MTD at 18 (emphasis in original), is wrong as a matter of fact and law. As a matter of fact, Plaintiffs allege "Lola has purposefully installed Google's tracking tools on its Website" and that "Google has intercepted Plaintiffs' and Class Members' communications via its tracking tools as described throughout this Complaint." FAC ¶ 24. "Google viewed Plaintiffs and Class Members' communications with Lola in order to provide advertising services to Lola." *Id*. at ¶ 32. And both Plaintiffs allege receiving such ads. *Id*. at ¶¶ 10, 16. What is more, as a matter of law, Google cites no case law or authority requiring such granular pleading. To the contrary, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1200 (S.D. Cal. 2024) held that similar allegations that a third-party software developer "'interpret[s], analyze[s], and also use[s] [the] intercepted conversations' for Salesforce's own 'business purposes," for its "financial gain,'" sufficient for a violation of Clause 3.

Google also incorrectly assumes that Plaintiffs' receipt of Forum Health's ads before using the Website is detrimental to the "use" analysis. Google MTD at 18. But, even receiving advertising *before* Plaintiffs visited the Website helps plausibly allege that Google uses intercepted communications: to target potential consumers with advertising, which in turn, makes it plausible that Plaintiffs' communications were used in the same manner—to either retarget them with advertising, or inform Google's software of the types of persons who would be interested in mylola.com.

Further, Google's criticism that Plaintiffs omit allegations on the specifics of the ads (whether they involved tampons) and that Instagram (a Meta platform) was the only platform mentioned, aim to impose a more stringent pleading requirement. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *11 (N.D. Cal. Oct. 1,

2024) ("[p]lausibility pleading does not require a plaintiff to foreclose every other avenue by which she could have been harmed[,] ... [s]he simply must plead facts that raise more than a sheer possibility that the defendant has acted unlawfully.") (cleaned up). Here, Plaintiffs have sufficiently alleged Google's violation of Clause 3.

***3. Plaintiffs Sufficiently Allege Forum Health's Violation of Clause 4.***

Plaintiffs Allege Forum Health's Requisite Knowledge.

Forum Health argues that "Plaintiffs have not alleged that Forum Health had knowledge of conduct by Google that would violate the statute and a purpose of aiding, agreeing with, or employing Google to commit those acts. Plaintiffs only allege that Google used information from the Website for LOLA's own business purposes." Forum MTD at 10. Forum Health's argument fails because "[t]he statute as worded does not include an intent standard." *St. Aubin*, 2024 WL 4369675, at *7. Simply put, asking Plaintiffs to plead that Forum Health "kn[e]w that [the third-party] was allegedly violating section 631(a) … goes beyond what the statute requires." *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025).

As the court in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) explained, clause four "imposes liability on anyone who 'aids, agrees with, employs, or conspires with' someone who violates the previous three clauses of California Penal Code § 631(a)." So CIPA's text does *not* impose a heighted "aiding and abetting" standard requiring knowledge and purpose. *Id*. More recent cases "find[] the approach in *Cousin* more persuasive because it more closely follows the language of the statute." *St. Aubin*, 2024 WL 4369675, at *8; *Tate*, 762 F. Supp. 3d at 959; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839 (E.D. Cal. 2025); *Casillas v. Six Flags Ent. Corp.*, 2025 WL 3684543, at *7, n.8 (C.D. Cal. Dec. 15, 2025).

That said, even if Plaintiffs were required to allege "knowledge" or "purpose" (which they are not), their complaint satisfies even that heightened standard. Plaintiffs allege: **(1)** Forum Health "purposefully installed Google's tracking tools on its

Website" (FAC ¶ 24); **(2)** Forum Health did so for the purpose of effectuating its "its marketing, advertising, and data analytics efforts and increase Defendants' profits" (*id.* ¶ 3; *see also id.* ¶ 45); and **(3)** Forum Health knew Google's software would intercept, analyze, and use consumers' communications because "Google's range of software services is based on Google's ability to collect and analyze information about consumers' web behavior and deliver targeted advertising to select consumers based on their web habits." (*id.* ¶ 34; *see also id.* ¶¶ 35, 41, 44 (detailing that Google's ability to provide its targeted advertising services to Forum Health relies on Google collecting user Website data, such as Plaintiffs' search terms on the Website and identifying data through methods like browser fingerprinting)).

Forum Health's reliance on *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942-43 (N.D. Cal. 2024) is inapt. There, Judge Rita F. Lin held a plaintiff failed to plead website owner knew it was "acting with the third party *in order* to have the third party perform acts that violate the statute," because "it only intended to enable the third party to process payments made on its Website." *Id*. at 942. However, the website owner did *not* know the third-party subsequently "then markets [customer's financial information] to merchants without customers' consent." *Id*. at 938.

But this case is different because Google Analytics *is* a marketing service. The whole point of Google Analytics is to analyze user's actions on websites so Forum Health and other companies can later retarget that user with ads for similar products. FAC ¶¶ 3, 24, 34-35, 41, 44-45.

Judge Lin's subsequent decision in *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *1 illustrates the difference. There, the court held "plaintiffs *have* adequately alleged intent" because they said the website owners "affirmatively embedded" tracking code on its website and "the purpose of [tracking] code is to 'track[ ] the people and type of actions they take' and provide 'a treasure trove of insights about [ ] customers' shopping habits, like their browsing and purchasing history.'" *Id*. at *4. "Therefore, it is plausible to infer from [the website owner's]

alleged affirmative act of integrating the third-party code into its website that it knew [the third parties] would intercept personally identifiable information and that [the website owner] had the purpose of employing [the third parties] to do so." *Id*. Again, the very same is true here.

### *4. Forum Health's Argument That Plaintiffs Consented To Google's Activities Lacks Support, And Thus, Fails.*

Forum Health argues that Plaintiffs fail to state a claim under § 631(a) (Forum MTD at 10-11) and § 632(a) (*id.* at 15) because Plaintiffs allege they were logged into their Google accounts when they visited mylola.com and "Google's privacy policy makes clear" that it collects information about user's activities on Google's services when users are logged in. *Id.* at 10, 15.

Tellingly, Google does not raise the same consent defense. For good reason. The Ninth in *Calhoun v. Google, LLC*, 113 F.4th 1141, 1150 (9th Cir. 2024) *rejected* Google's consent defense based on its "general Privacy Policy." While the policy *generally* disclosed data collection, "a reasonable user would not necessarily understand that they were consenting to" having Google track the actions users took when they were in Incognito mode. *Id*. The reason was clear: "[C]onsent is not an all-or-nothing proposition." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 192 (N.D. Cal. 2019) (rejecting Google's consent defense) (quoting *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (also rejecting Google's consent defense). "For consent to be actual, the disclosures must 'explicitly notify' users of the conduct at issue." *Calhoun*, 113 F.4th at 1147. And here, Forum Health fails to point to anything in Google's Privacy & Terms which "explicitly notifies" users that Google would be collecting the specific searches they run on a menstrual and sexual health website or that Google would be collecting whether users were purchasing tampons, condoms, or vibrators. In other words, "[t]he nature of the data collection that plaintiffs agreed to is akin to the general internet browsing…; the collection of [sensitive product

purchases]… is a different matter entirely." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022).

Of course, all this *assumes* Google's Privacy & Terms are even properly before the Court. As Forum Health concedes, however, Plaintiffs do *not* cite Google's privacy policy in the FAC. *See generally* FAC; *see* Forum MTD at 11, n.8. ("At this stage the Court can only consider the web pages 'directly quoted' in the FAC."); *De la Cabada v. Ytel, Inc.*, 2020 WL 1156909, at *1, n.*3 (N.D. Cal. Mar. 10, 2020). Thus, even if Forum Health *had* properly requested the policy be incorporated by reference (or judicially noticed), this Court would *not* be able to consider it at this stage.

Forum Health's argument also assumes, without any support, that Google gave Plaintiffs adequate notice, and that Plaintiffs assented, to its privacy policy. Plaintiffs are not bound by Google's terms and policies simply because Google posted them online. At a minimum, Defendants would need to show the "hyperlink was sufficiently conspicuous to 'put a reasonable user on notice of the Terms of Use.'" *Calhoun*, 113 F.4th at 1147. And of course, "[r]easonable conspicuousness alone is not sufficient to bind a user—a user must *agree* to [Google's] terms, not merely see them." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158 (9th Cir. 2025) (emphasis added). These are all unanswered questions prematurely raised before this Court.

"[C]onsent is 'an affirmative defense for which defendant bears the burden of proof.'" *Calhoun*, 113 F.4th at 1147. Forum Health has not met its burden through this cursory motion.

#### ***5. Google Was Not A Party To The Communications.***

Google argues it cannot be liable under § 631 because Google was "a party to the communication" given "there was a direct transmission between a user's browser and Google[.]" Google MTD at 19. But the Ninth Circuit already rejected this very same argument in *In re Facebook*, 956 F.3d at 608, holding that Facebook was not "exempt from liability as a matter of law under … CIPA as a party to the communication" because the "simultaneous, unknown duplication and

communication of GET requests do not exempt a defendant from liability under the party exception." "Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption." *Id*. at 607.

Like *In re Facebook*, this case also involves the "simultaneous unknown duplication and communication of GET requests" to Google. *See* FAC ¶¶ 47-48, Figures 4 and 5 (showing screenshots of GET requests simultaneously being sent to Google as other portions of Forum Health's webpage were loading). So, it cannot claim it is a party to the communication under CIPA. *In re Facebook*, 956 F.3d at 607.

Likewise, in *Ribas*, the California Supreme Court held that the "simultaneous duplication" of a communications through a "mechanical device" would be actionable under § 631. 38 Cal.3d at 361-62. In reaching this conclusion the *Ribas* court held that "such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." The same is true here. Google is alleged to have "simultaneously duplicat[ed]" Plaintiffs' messages to Forum Health without their knowledge or consent. *See* FAC ¶ 31. This likewise deprived Plaintiffs over the control of the dissemination of their statements to Forum Health.

Google's reliance on the Third Circuit's decision *Cole v. Quest Diagnostics, Inc.*, 2025 WL 3172640, at *3 (3d Cir. Nov. 13, 2025) is misplaced. It is a Third Circuit case, and we are not in the Third Circuit. We are in the Ninth Circuit, and the Ninth Circuit's decision in *In re Facebook Inc., Internet Tracking Litigation*, 956 F.3d at 608 controls. The Ninth Circuit's application of the party exemption analysis in *In re Facebook* also tracks the California Supreme Court's reasoning in *Ribas* regarding the simultaneous duplication of messages. *Cole*, in contrast, does not.

### C. Plaintiffs State A Claim Under CIPA § 632.

#### *1. Plaintiffs Can State A CIPA § 632 Claim Against Forum Health.*

[6]Forum Health argues that Plaintiffs failed to state "a claim against LOLA for aiding and abetting alleged eavesdropping or recording by Google" and further argues that "Plaintiffs only allege that Google (not LOLA) eavesdropped and/or recorded their communications." Forum MTD at 13. This lacks merits.

First, Plaintiffs *did* allege that Forum Health recorded their communications. In paragraph 83 of the FAC, Plaintiffs allege: "Lola's intentional use of an electronic amplifying or record device to… record the confidential communications". So, the issue here is *not* that Plaintiff failed to state a claim; rather the issue is Forum Health's failure to read the claim that was stated.

Second, while Forum Health correctly notes that it "cannot eavesdrop on [its own] communications [with] Plaintiffs," Forum MTD at 13, it is nevertheless liable under § 632 for *recording* those same communications without Plaintiffs' consent. A defendant can be liable for "recording its own conversation with plaintiff if plaintiff did not consent to the recording." *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182, n.4 (N.D. Cal. 2024) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (2006)).

Third, Forum Health is liable for Google's violation of § 632 under a derivative liability theory. "Nothing in the language of CIPA explicitly limits the application of [Penal Code] section 31[,]" regarding derivative liability, to CIPA § 632. *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5. Applying Section 31 to § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at

[6] Forum Health argues that "LOLA cannot eavesdrop on communications that Plaintiffs intentionally sent to LOLA." Forum MTD at 13. Plaintiffs do not dispute this. Rather they base their § 632 claim on recording.

*5 (C.D. Cal. Oct. 23, 2023). The court in *Rack Room Shoes* explained that the plaintiffs adequately alleged the "[defendant] knew [the third parties'] data collection had the purpose of tracking individually identifiable user habits" and that by knowingly and affirmatively embedding third parties' tracking codes into its website, the plaintiffs sufficiently plead substantial participation. 2025 WL 1085169, at *5.

The same is true here. Specifically, Plaintiffs allege that Forum Health enabled Google's wiretapping of Plaintiffs' communications on mylola.com by choosing to "purposefully install[] Google's tracking tools on its Website." *See, e.g.*, FAC ¶¶ 3, 5, 24, 45. Plaintiffs also allege that Forum Health uses Google's services and Google in turn uses the communications it obtains from the Website "in order to provide advertising services to Lola." *Id.* FAC ¶ 32. In other words, Forum Health knew Google's software had the capability of recording communications. *See id.* ¶ 3, 32, 45. These allegations suffice. *Rack Room Shoes*, 2025 WL 1085169, at *5.

***2. Plaintiffs Allege Google Acted Intentionally.***

Google challenges Plaintiffs' CIPA § 632 claim by first arguing that Plaintiffs' claim fails "because they do not allege that Google acted with 'intent.'" Google MTD at 22. But contrary to Google's claims, "intent can be averred generally." *Smith*, 735 F. Supp. 3d at 1198 (denying Google's motion to dismiss CIPA claim).

What is more, Plaintiffs' allegations that Google "surveil[s] [users'] communications on their partners' websites" so it can "collect and analyze information about consumers' web behavior and deliver targeted advertising," FAC ¶¶ 28 and 34, is more than enough to plausibly plead intent. The court in *Smith v. Google* likewise held that a plaintiff sufficiently pled Google's intent under CIPA where he "allege[d] that the information transmitted to Google would have been 'highly valuable' as a 'demographic marker[ ] for advertising purposes.'" 735 F. Supp. 3d at 1198. So too, in *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *11 (N.D. Cal. Oct. 10, 2025), another court held the same kinds of digital marketing allegations were sufficient to allege

intent under § 632. The plaintiffs' allegations that LinkedIn "knew that it intercepted users interactions on the Website that incorporated [Insight Tag] and that the company intercepted consumers' confidential information ... in order to monetize that data for targeted advertising," supported the "inference that LinkedIn intended to invade Plaintiffs' privacy." *Id.* (cleaned up).

### *3. Google's Software Qualifies As A "Device."*

Google argues that Plaintiffs' § 632 claim fails "because they do not plead that the Google Analytics code is an amplifying or recording ***device***" because it is software. Google MTD at 23 (cleaned up). Google is "misguided." *Tate*, 762 F. Supp. 3d at 958.

While a few older decisions have held that software is not a device under § 632(a), the overwhelming majority of "[r]ecent decisions in this Circuit have rejected [Google's] interpretation and found that software *is* a device under section 632(a)." *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (emphasis added) (cleaned up); *see also Tate*, 762 F. Supp. 3d at 957; *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024); *Rack Room Shoes*, 2025 WL 1085169, at *5; *JustM2J LLC v. Brewer*, 2025 WL 3208815, at *17 (E.D. Cal. Nov. 17, 2025); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015).

To support its contrary reading, Google relies on *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) and its progeny. Yet as the *Tate* court explained, *Moreno* is not "applicable because [it] analyze[d] 'devices' under section 637.7(d), rather than section 632(a)." 762 F. Supp. 3d at 957. "But section 637.7(d)'s text explicitly restricts its definition of 'electronic *tracking* device'" whereas "other sections such as 632(a) … use the more generic phrase 'electronic device.'" *Id.* What is more, "section 637.7 is concerned with electronic tracking devices that are clearly meant to be physical," whereas section 632 does not. *Id.* at 957-58. "Specifically, section 637.7(d) defines an 'electronic tracking device' as one that can be 'attached to a vehicle or other movable thing' which evinces the

statute's emphasis on proscribing physical tracking devices." *Id*. at 958. "Section 632, however," does *not* define the term "electronic device," and "lacks any language suggesting that an 'electronic amplifying or recording device' must be physical in nature." *Id*. So "[r]elying on the more specific text of section 637.7(d) to inform section 632(a) is misguided." *Id.*

Google also argues that § 632(a)'s use of the phrase "telegraph, telephone, or other device" suggests "that the Legislature intended the term 'device' to refer only to physical equipment. Google MTD at 25. This is misleading because that language referring to telegraphs and telephones comes from a *different* clause of §632(a) which lists *devices used to communicate*. But the relevant question here is whether software is an "*electronic amplifying or recording device*," that records the conservations taking place on those communication devices. Cal. Penal Code § 632(a).

Google then points to dictionary definitions of "device" to support its argument that "'device' refers to a tangible object or machine." Google MTD at 24 (citing Cambridge Dictionary). But this argument is also unpersuasive. "To the Court's eye, the gravamen of these cases is that 'device' is often understood in context … to be more expansive than, say, 'equipment' or 'mechanism,' as Defendant's reliance on dictionary definitions [ ] would require." *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024).

Google next argues that the Legislature's decision not to modify the phrase "electronic amplifying or recording device" when it amended § 632(a) in 2016 suggests the Legislature "did not intend for Section 632 to apply to software." Google MTD at 25. While that is certainly *one* way of reading the legislative tea leaves, it is not the only way. Plaintiffs can just as easily argue that before § 632 was amended in 2016, courts were holding that software *was* a device. *In re Carrier IQ*, 78 F. Supp. 3d at 1084. And so, the Legislature's decision *not* to amend phrase shows they thought *In re Carrier IQ* was correctly decided and saw no need to modify the phrase. Because "negative-implication canon … 'can be employed as easily to support the opposite

interpretation,'" it is a "relatively weak" interpretive tool. *Blumberger v. Tilley*, 115 F.4th 1113, 1138 (9th Cir. 2024). Further, *In re Jennings*, 34 Cal. 4th 254, 273 (2004) does not help Google. There, the court compared the statute at issue (which did not explicitly include an intent element) to other statutes on "related issues" (which did explicitly include an intent element). *Id.* In other words, *Jennings* compared legislative drafting choices. *See id.* But here, §§ 638.50 and 638.51 do not explicitly include *software* in the definition of "pen register." *See* Cal. Pen. Code §§ 638.50 and 635.51. Instead, it was courts, not the Legislature, who interpreted "process" to include software. Thus, Google cannot draw *legislative* intent from *courts*' interpretation of "process."

## III. CONCLUSION

CIPA was passed over a half century ago because "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and … the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Defendants worked together to implement tracking technologies on mylola.com without regard for the law or consumers' consent. Their motions to dismiss should be denied.

Dated: January 26, 2026

**BURSOR & FISHER, P.A.**

By: /s/ *Stefan Bogdanovich*
Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

Email: ltfisher@bursor.com
sbogdanovich@bursor.com
idiaz@bursor.com

*Attorneys for Plaintiffs*