COOLEY LLP
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
ARGEMIRA FLÓREZ (331153)
(aflorez@cooley.com)
JULIA M. IRWIN (352861)
(JIrwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

COOLEY LLP
AMANDA JEREIGE (324644)
(ajereige@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550-6420

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JANE DOE 1 and JANE DOE 2, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FORUM HEALTH & PERSONAL CARE LLC, d/b/a LOLA and GOOGLE LLC,

Defendants.

Case No. 3:25-cv-02383-JES-VET

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: March 11, 2026
Time: 2:30 p.m.
Dept: 4B
Judge: James E. Simmons, Jr.

Trial Date:TBD
Complaint Filed: September 12, 2025

## I. INTRODUCTION

Plaintiffs' CIPA Section 631 and 632 claims, based on routine commercial browsing for tampons, do not satisfy Article III's injury-in-fact requirement. Their Section 631 claim also fails because they cannot (despite two attempts at pleading a viable claim) allege that Google attempted to understand their browsing activity while it was in transit. Nor can they allege a Section 632 claim, because they plead only that Google recorded presumptively non-confidential online shopping activities without the required intent. Their First Amended Complaint must be dismissed.

## II. ARGUMENT

### A. Plaintiffs Do Not Plead Article III Injury.

Google argued in its opening brief that Plaintiffs' allegations about tampons do not sufficiently allege injury-in-fact. Rather than take this head on, Plaintiffs now assert that because they ***could have*** searched for "vibrators" and "condoms" and ***could have*** purchased these items from Lola, their communications exposed them to injury-in-fact. Plaintiffs cannot rely on unpled, hypothetical facts to avoid dismissal.

***<u>First</u>***, Plaintiffs do not even attempt to argue that they alleged "highly offensive" conduct, as required. *Popa v. Microsoft Corp.*, 153 F.4th 784, 790–91 (9th Cir. 2025) (standing requires a match between the alleged injury and harms actionable at common law); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (privacy claim must plead such "an egregious breach of the social norms" as to be "highly offensive"). The phrase is nowhere in their Opposition. Ignoring Google's citation to an order dismissing claims involving sex toys, Plaintiffs claim that browsing for tampons can support injury because tampons are more sensitive than "pet food, pizza, and energy drinks." (Opp. at 4, 5.) Perhaps aware of the weakness of this argument, Plaintiffs raise the specter of *Griswold* and other decades-old cases about contraception to argue that condoms and vibrators they ***could have, but did not buy*** are the source of their alleged injury. (Opp. at 1–5, 9, 15, 23.) The problem is that they have no allegations to support this supposed injury, and

even if they did it would not be actionable. *Delong v. PHE, Inc.*, 2025 WL 2447787, at *6–7, *10 (E.D. Pa. Aug. 25, 2025) (dismissing claims involving sex toys).

Plaintiffs next argue that Google could hypothetically make inferences from purchases or the placement of items in virtual carts. (Opp. at 1, 4, 5.) For example, if a person stops buying tampons on the Lola website, Google could hypothetically infer their "decision whether to bear or beget a child." (*Id.* at 5.) But Plaintiffs do not plead they bought any Lola products or even added them to their carts, let alone that they stopped buying them. Plaintiffs' speculative assertion has no bearing on their own standing to sue. *See, e.g.*, *Morehouse v. Apple, Inc.*, 2025 WL 3525573, at *2 (N.D. Cal. Dec. 4, 2025) (granting motion to dismiss for lack of standing because "Plaintiffs' allegations are based on hypothetical injuries.")

***Second***, Plaintiffs assert they suffered cognizable injury because there is no CCPA opt-out notice on Lola's website, so they "would have" assumed they were not being tracked. Their convoluted logic is that most websites present opt-out notices, and because Lola did not, Plaintiffs could have believed they were safe. (Opp. at 5–6.) First, none of this is in the Complaint. Plaintiffs never alleged that most websites offer an opt-out, nor that Lola failed to, nor that they believed anything about the CCPA. Regardless, Plaintiffs' cited case is irrelevant. Wiley found a reasonable expectation of privacy where plaintiffs exercise an opt-out right and were nonetheless tracked. *Wiley v. Universal Music Grp.*, 2025 WL 3654085, at *4–5 (N.D. Cal. Dec. 17, 2025).

Similarly, *Smith v. Rack Room Shoes* concerns a privacy policy's promise. (Opp. at 6.) But Plaintiffs do not allege that Lola's Privacy Policy made such a promise about their browsing activity, nor that they read it—so once again, this argument is irrelevant. Plaintiffs also criticize Google for citing cases under Pennsylvania law and that pre-dated the CCPA, but this, too, is unavailing. They ignore multiple citations to post-CCPA, in-circuit case law demonstrating that they had no reasonable expectation of privacy and hence lack standing. (Mot. at 8–9.)

***Third***, as a last resort, Plaintiffs argue that the question whether they suffered a concrete injury is premature. Ignoring Google's authorities resolving the issue on the pleadings (Opp. at 6–7), Plaintiffs instead cite inapposite cases, none of which bear on this Court's analysis. *Frasco v. Flo Health, Inc.* (a class-certification order) predated the binding *Popa* decision requiring that courts "look to the ***specific*** underlying harm experienced by the plaintiff and compare it, ***in detail***, to a specific common-law tort." *Popa*, 153 F.4th at 791 (emphasis altered); *Frasco*, 349 F.R.D. 557, 579–80 (N.D. Cal. 2025) (analyzing generic "loss of control over [] personal information" as the harm). Similarly, the *Gabrielli v. Haleon US Inc.* order was issued days after *Popa* and did not apply that controlling authority. Without the benefit of the Ninth Circuit's guidance, *Gabrielli* was premised on precisely the rule *Popa* rejected—that a bare statutory violation can satisfy injury-in-fact. *Compare Gabrielli*, 2025 WL 2494368, at *5 (N.D. Cal. Aug. 29, 2025) ("A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing" (cleaned up)), *with Popa*, 153 F.4th at 789 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

### B. Plaintiffs Fail to Allege a Section 631 Claim.

#### 1. Plaintiffs Fail to Allege Essential Elements Under CIPA's Second Clause.

##### a. Plaintiffs' Novel Definition of "Communication" Has No Basis in Existing Law or Common Sense.

Plaintiffs do not meaningfully rebut Google's argument that they fail to allege a single real-time interception. (Mot. at 14–16.) Plaintiffs allege that when a user sends a message to Lola's website, this causes the embedded GA code to return a second message to the user's browser. That second message instructs the browser to duplicate the first message and transmit a third message, containing the duplicate, to Google. (FAC ¶ 31.) Unable to escape these allegations, Plaintiffs contort the definition of a "communication" to encompass the entire series of separate transmissions that together constitute a web browsing session, no matter how long

that session lasts. (Opp. at 11, 13, 17–19.) Plaintiffs do not cite a single case that supports their reading, which is contrary to established case law.

***<u>First</u>***, Plaintiffs assert that "***[i]n the wiretapping context***," one "communication" equals one telephone call. (Opp. at 11.) It is true that a single phone call can be intercepted in transit when a wiretapper listens in. But the internet is different. For example, courts applying CIPA to emails consider a single email—not a whole thread—to be the relevant unit of communication. *See, e.g.*, *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, *10 (N.D. Cal. Mar. 18, 2014) (describing classes of persons who have sent "an email message.") A single email is intercepted in transit only if it is captured before it reaches the destination server. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d, 1016, 1037 (N.D. Cal. Aug. 12, 2024). A user's interactions with a website (clicking a button, running a search) are similarly composed of discrete transmissions of data packets. (*See* FAC ¶ 31.) Each packet is a message that may contain CIPA contents, like search terms ("tampons"), or non-contents, like GET requests. (*Id.*) Because web interactions, like emails, are discrete messages rather than prolonged events (like phone calls), the natural unit of communication is a single transmission. *See, e.g.*, *Crano v. Sojern, Inc.*, 2025 WL 2689267, at *7 (Sep. 19, 2025) ("[T]he crucial question under § 631(a)'s second clause is whether [Plaintiff] has plausibly alleged that [Sojern] read ***one of [their] communications*** while it was still in transit" (emphasis added) (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021))).

Plaintiffs' interpretation that an entire web browsing session is one "communication" would impermissibly obviate the in-transit requirement. *In re Intuit Priv. Litig.*, 138 F. Supp. 2d 1272, 1281 (C.D. Cal. 2001) ("We may not interpret a statute so as to render some of its language superfluous; at any rate, we may not do so lightly."). What would it mean for an email ***thread*** that could span six months or a year to be intercepted in transit? Plaintiffs cannot answer, because this would be impossible. Moreover, Plaintiffs' interpretation would make it impossible

to define a single "communication." A person could browse eBay for kitchen appliances, then switch to handbags, log on to Wells Fargo to check their account balance, make an offer on a Birkin, go eat dinner, return to find their offer declined, and counter with a higher offer. Where does the "communication" begin and end?

***Second***, Plaintiffs cite *Konop* to argue that in the context of a phone conversation, a "communication" may be ongoing. (Opp. at 11.) But *Konop v. Hawaiian Airlines, Inc.* distinguished wire communications, which ***can*** include "acquisition of a communication subsequent to transmission," from the "***electronic*** communication" alleged here. 302 F.3d 868, 877–78 (9th Cir. 2002) (emphasis added). Unlike wire communications, electronic communications are subject to a "narrow interpretation" requiring interception ***before*** receipt by the intended recipient—i.e., "stop[ped], seize[d], or interrupt[ed] ***in progress or course before arrival.***" *Id.* (emphasis added); *accord Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025).

***Third***, Plaintiffs argue that because Section 631(a) proscribes the interception of the "contents," "plural of any communication," "a communication must have more than one piece of content." (Opp. at 10 (cleaned up).) This is irrelevant to the question whether a "communication" may span multiple back-and-forth messages, because a single message can also contain "contents," plural. For example, "a Google search URL not only shows that a user is using the Google search engine, but also shows the specific search terms the user had communicated to Google." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

### b. Plaintiffs Fail to Allege In-Transit Interception

Plaintiffs argue that under *Konop*, they have alleged in-transit interception because they plead "simultaneous duplication." There are two problems with this argument. ***First***, *Konop* does not concern simultaneous duplication; it held that a person does not, as required, "intercept" any communication simply by accessing a website. *Konop*, 302 F.3d at 878.

***__Second__***, the Complaint forecloses the possibility of "simultaneous" duplication by alleging: **(1)** Plaintiffs sent messages directly to Lola's website **(2)** ***after*** those messages were received by Lola, the GA code on Lola's website returned a message prompting the users' browsers to duplicate the original messages, and **(3)** those duplicates were then separately sent to Google. (Opp. at 12–13 (quoting FAC ¶ 31); Mot. at 15–16 (arguing same).) That Plaintiffs' specific allegations therefore contradict in-transit interception renders *Heerde v. Learfield Comm'ns, LLC*, 741 F. Supp. 3d 849, 854-55 (C.D. Cal. 2024), *Doe v. Call-On Doc, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025), and *Krzyzek v. OpenX Techs., Inc*, 2026 WL 206855, at *7 (N.D. Cal. Jan. 27, 2026), distinguishable.

Like Google, the defendant in *Krzyzek* argued that the plaintiffs' specific allegations describing the interception foreclosed simultaneous duplication. However, this argument relied on facts alleged in a ***different case***—which the court appropriately ignored. Def.'s Mot. to Dismiss at 18–19, *Krzyzek v. OpenX Techs.*, No. 3:25-cv-05588 (N.D. Cal. Nov. 21, 2025), Dkt. No. 26 (citing *In re Zynga Priv. Litig.*, 750 F.3d at 1101-02 for the key fact that "[w]hen users enter that URL, the browser sends a GET request to the website, which then responds by sending the website's content back to the user's browser.")). Here, this Court can look right within the four corners of Plaintiffs' FAC to find the contradiction that dooms their claims. (FAC ¶ 31; Mot. at 15–16 (describing contradictory allegations).)

*Rodriguez v. Google*, which involved user activity in apps, is instructive. The *Rodriguez* court granted Google's motion to dismiss because, as here, the plaintiffs' own allegations contradicted the supposed simultaneity of the duplication process. Like Plaintiffs, the *Rodriguez* plaintiffs recited perfunctory allegations of simultaneous duplication in their Second Amended Complaint, yet the court dismissed because the complaint more specifically alleged that the data were transmitted to Google ***after duplication***. *Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021). The same result should follow here.

Plaintiffs counter that *Jones v. Tonal* "involved users communicating to a website's chat feature." (Opp. at 12.) But in *Jones*, as here, the plaintiff pled two separate transmissions: **(1)** the plaintiffs sent the messages directly to the third-party chat service, which later **(2)** created transcripts for its website customer. 751 F. Supp. 3d 1025, 1036–37 (S.D. Cal. 2024). Plaintiffs cannot point to differences in the technology to avoid the rule articulated in *Jones* requiring the third party to "halt the transmission of the messages to their intended recipients[.]" *Id.* at 1037.

**c. Plaintiffs Fail to Allege Reading.**

Plaintiffs attempt to excuse their failure to allege reading by arguing they "are under no obligation to 'plead ***specific facts***[.]'" (Opp. at 14 (cleaned up).) Google does not, as Plaintiffs claim, invoke Rule 9(b), but applies the universally recognized requirement that "the plaintiff pleads ***factual content*** that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Plaintiffs have not done so.

Plaintiffs allege that Google collects, aggregates, and organizes data. (Opp. at 14 (citing FAC ¶¶ 31–44, 43).) Google argued that data organization is not reading. (Mot. at 12.) Plaintiffs counter that to organize data, Google "necessarily needs to acquire some basic knowledge of *what* the data *is*," which "can only be accomplished" through reading. (Opp. at 14.) Plaintiffs ignore Google's cited cases explaining why categorization by data types, like categorization of sealed packages by size, shape, or weight, does not require understanding what is inside. (Mot. at 12.) Plaintiffs' only other argument, also unsupported by case law, is a nonsensical analogy: "If a librarian sorts books into dramas, comedies, and thrillers, then she has necessarily taken some 'effort at understanding the meaning of the communication.'" (Opp. at 15.) This is obviously false—the notion that a person has to read a book to discern its genre is absurd, and even if true, would be inapt as applied to URL data. A person could easily identify "https://mylola.com/collections/periods" (FAC ¶ 7) as a URL by its format even if they did not know what "Lola" referred to, or could not

read English at all. Plaintiffs' allegations of organization by data types are therefore agnostic between reading URLs and sorting them by appearance.

Plaintiffs do not plead enough to elevate their allegations of reading into the realm of plausibility. Neither Plaintiff alleges that after searching on Lola's website, she saw tampon-related advertisements she can attribute to Google. Plaintiffs' perfunctory allegations pale in comparison to the detail other courts have required. *See, e.g.*, *Shah*, 768 F. Supp. 3d at 1047 (finding allegations that after applying for credit cards on the defendant's website, where Meta's tracker was embedded, plaintiffs received advertisements for credit cards from the defendant's competitors on Facebook sufficient).

Plaintiffs seek to justify their conclusory allegations by pointing to *Jackson v. LinkedIn*. (Opp. at 14 (citing *Jackson v. LinkedIn*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024).) *Jackson* is an outlier in its cursory treatment of the "reading" requirement; its two paragraphs of analysis did not explain why it found reading on the facts alleged. In a more recent opinion dismissing "allegations strikingly similar to" those in *Jackson,* another Court acknowledged that "one may reasonably infer that LinkedIn read the contents of Plaintiffs' communications[.]" *L.B. v. LinkedIn Corp*., 2025 WL 2899514, at *15-16 (N.D. Cal. Oct. 10, 2025). Yet because the allegations of reading were "not entirely clear," the plaintiffs failed to "plead any facts that create a 'coherent story' of ***how*** LinkedIn read the specific communications[.]" *Id.* at *16 (emphasis added). The same is true here.

Finally, Plaintiffs seek refuge in *Riganian v. LiveRamp Holdings, Inc.* (Opp. at 14–15.) But in that case, the plaintiffs' 83-page complaint included a plethora of allegations detailing 18 spreadsheets of specific data the defendant collected about the plaintiff from online and offline sources, which, read together, could reveal whether she was, *e.g.*, a cancer patient, union member, Muslim, poor, a gambler, unemployed, etc. Compl. ¶¶ 1–18, *Riganian v. LiveRamp Holdings, Inc.*, No. 25-cv-00824 (N.D. Cal. Jan. 24, 2025), Dkt. No. 1. That is a far cry from what is pled here.

**d. Plaintiffs Fail to Allege Reading In Transit.**

Google's Motion explained why Plaintiffs do not allege reading in transit. (Mot. at 16–18.) In response, Plaintiffs attempt to lower the bar, arguing that "neither the text of the statute, nor the California Supreme Court" have required reading in transit. (Opp. at 16–17.) Plaintiffs are wrong. Clause Two expressly and unequivocally requires reading in transit. Cal. Penal Code 631(a) (penalizing persons who "read[], or attempt[] to read, or to learn the contents or meaning of any message . . . while the same is in transit[.]"). Many courts have dismissed Section 631 claims for failure to plead reading in transit, beginning with *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *7–8 (C.D. Cal. July 12, 2024).[1] Plaintiffs attempt to address these authorities in a one-sentence footnote noting, without more, that they involved different technologies or failed to allege simultaneous interception. This Court should not be persuaded.

Faced with this sea of adverse precedent, Plaintiffs point to five cases, most pre-dating *Gutierrez*, supposedly rejecting the reading in-transit requirement. Four did not address reading in transit. *Heerde v. Learfield* offered no analysis in rejecting in-transit reading, 741 F. Supp. 3d at 863, likely because the defendant only argued the point in passing. Mot. to Dismiss at 26, *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493 (C.D. Cal. Sep. 21, 2023), Dkt. No. 38 (devoting a single sentence to this issue). Plaintiffs also argue that Google's interpretation would legalize telephonic eavesdropping because telephonic information can never be understood while in transit. That is nonsense. A telephonic eavesdropper need not completely comprehend the meaning of a message at "the speed of light" (Opp. at 18) to violate the statute, he need only initiate the interpretive ***attempt*** to learn while listening in.

[1] *See, e.g.*, *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5–6 (N.D. Cal. Oct. 17, 2025); *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *13-14 (C.D. Cal. Dec. 12, 2025); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025); *Moss v. Resortpass Inc.*, 2025 WL 3452360, at *1 (Cal. Super. Ct. Oct. 30, 2025); *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025); *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025); *Boulton*, 2025 WL 314813, at *1.

Finally, Plaintiffs argue that the in-transit reading inquiry should be resolved at summary judgment. (Opp. at 19.) But Plaintiffs' FAC suffers from the same deficiencies as complaints dismissed on the pleadings for failure to allege reading in transit—they are internally contradictory. *See, e.g.*, *Fenix*, 2025 WL 3627591, at *14 (dismissing because "Plaintiffs do not adequately allege that Chatters are reading these messages 'in transit,' but rather that Chatters are viewing the messages after they were received and mirrored from the Creator's inbox"); *Lewis*, 2025 WL 3687546, at *12 (dismissing because "Plaintiffs' allegations suggest that Defendant would analyze Plaintiffs' communications after it collects them, not as it collects them"); *see also Moss*, 2025 WL 3452360, at *1 (sustaining demurrer for failure to allege reading in transit). Where, as here, Plaintiffs "have not pled enough facts to nudge their claim across the line from conceivable to plausible," dismissal is proper. *Rodriguez v. ByteDance, Inc.*, 2025 WL 2495865, at *7 (N.D. Ill. Aug. 29, 2025).

**2. Plaintiffs Fail to Allege Use as Required By Clause Three.**

Plaintiffs do not dispute that if their derivative Clause Two claim fails, so too does their Clause Three claim. Plaintiffs instead complain that their "use" claims pass the plausibility pleading bar. They do not. While Plaintiffs allege seeing ads, they never allege that: (1) they saw ads ***after*** performing searches on Lola's website; (2) those ads were related to tampons or otherwise based on their activity on Lola's website; and (3) the ads they saw have any connection to Google's alleged behavior. (Mot. at 18–19.) Neither of Plaintiffs' authorities would excuse these gaping holes. The plaintiff in *St. Aubin v. Carbon Health Technologies, Inc.*, specifically alleged that she booked COVID-19 vaccination appointments on Carbon Health's website, and then received advertisements related to COVID-19 vaccinations *as a direct result* of the challenged analytics technology. Compl. ¶ 7, *St. Aubin*, No. 24-cv-00667, (N.D. Cal. Feb. 5, 2024), Dkt. No. 1. Likewise, the complaint in *D'Angelo v. FCA US, LLC* did not merely offer vague allegations about financial gain, but described third party Salesforce's use of the challenged data in detail. Compl. ¶ 17, *D'Angelo*,

No. 3:23-cv-982 (S.D. Cal. May 26, 2023), Dkt. No. 1 (describing nearly 40 types of information Salesforce collected and used for analytics purposes). Plaintiffs' cited authorities thus only underscore that their FAC has not adequately pled use.

**3. The Party Exception Forecloses Liability Under CIPA Section 631.**

Plaintiffs' argument that CIPA's party exception does not apply focuses solely on a single paragraph of Google's three-page argument, but ignores the *Javier* standard this Court adopted in *Jones*, 751 F. Supp. 3d 1025, 1033-34. Plaintiffs do not address their failure (and inability) to plead that Google has the capability to use the challenged data for its own independent purposes, as more than Lola's service provider. They therefore concede the party exception bars their claims. *See, e.g.*, *Velez v. Foresters Life Ins. & Annuity Co.*, 2025 WL 3691474, at *6 (C.D. Cal. Dec. 11, 2025) ("A party's failure to address an argument in opposition briefing constitutes a concession of that argument").

**C. Plaintiffs' Section 632 Claim Fails.**

**1. Plaintiffs Cannot Allege Intent.**

Plaintiffs concede that their strongest allegation of intent is "that Google surveils users' communications on their partners' websites so it can collect and analyze information about consumers' web behavior and deliver targeted advertising." (Opp. at 27.) These are general allegations about web behavior, not allegations that Google specifically intended to receive information about Plaintiffs' menstrual product purchases. But in-circuit cases confirm that Plaintiffs must plausibly allege the defendant intended to receive the ***specific type*** of information at issue. *See, e.g.*, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) ("[P]laintiffs have not adequately alleged that Google intentionally obtained patients' ***private health information***" (emphasis added)). Plaintiffs' authorities only prove this: The *L.B.* plaintiff specifically alleged LinkedIn collected granular information from health websites because it allows "healthcare providers and insurance

companies to target potential customers." (Compl. ¶ 18, *L.B. v. LinkedIn*, No. 24CV4455338 (Santa Clara Super. Ct. Aug. 20, 2024), Dkt. No. 1.) And as Plaintiffs themselves concede (Opp. at 27), the complaint in *Smith v. Google* alleged Google intended to receive the ***specific financial information*** at issue. Consol. Am. Compl. ¶ 40, *Smith*, No. 5:23-cv-03527 (N.D. Cal. Oct. 9, 2023), Dkt. No. 35 (alleging that "[i]ncome and other related financial information are highly valuable demographic markers for advertising purposes."). Plaintiffs' allegations here are not enough.

### 2. Plaintiffs Fail to Rebut the Presumption that Online Communications are Not Confidential.

Citing *Smith v. Google* and *Brown v. Google*, Plaintiffs claim that California courts have "never recognized a legal presumption" that internet communications are not confidential. (Opp. at 4 (citing *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023).) Two outlier interpretations of California law are an insufficient rebuttal to the great weight of recent authority confirming the presumption. *See, e.g.*, *Luminate Home Loans, Inc. v. Better Mortg. Co.*, 2026 WL 102686, at *22 (S.D. Cal. Jan. 14, 2026) ("In California, courts have developed a presumption that Internet communications do not reasonably give rise to the reasonable expectation of privacy"); *accord In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *9 (N.D. Cal. Mar. 28, 2025); *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *7 (C.D. Cal. Dec. 24, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022).

To overcome this well-established presumption, Plaintiffs must show "something unique about [their] particular internet communications which justify depart[ure]." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799. Plaintiffs in other cases have done so by alleging disclosure of extremely sensitive information, such as doctor-patient communications, *see, e.g.*, *id.*, modalities of mental health therapy

sought, *see, e.g.*, *Sussex Publishers*, 2025 WL 948060, at *3, or financial information, *see, e.g.*, *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *7–8 (N.D. Cal. Aug. 11, 2025). By contrast, Plaintiffs' alleged commercial browsing for drugstore items does not justify exemption, and Plaintiffs cite no cases to the contrary.

### 3. Plaintiffs Do Not, and Cannot, Plead That Google Analytics Software is a Device.

Plaintiffs offer no rebuttal to Google's authorities holding that software is not a device. (Mot. at 23–25.) Instead, Plaintiffs claim that an "overwhelming majority" of courts have rejected Google's position. (Opp. at 28.) But federal district courts defer to recent constructions of state statutes adopted by the relevant state courts. *See, e.g.*, *Cardenas v. McLane FoodServices, Inc.*, 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2011) (noting "the persuasiveness of California state court decisions for interpretations of California state laws" and finding "later-issued California cases more convincing" than federal district court cases); *In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litig.*, 2012 WL 1931030, at *1 n.1 (C.D. Cal. Apr. 17, 2012) ("On matters of state law, state court decisions will almost always be more significant than federal district court opinions."); *In re McKesson Corp. Derivative Litig.*, 2018 WL 2197548, at *14 (N.D. Cal. May 14, 2018) (similar).

A California state court recently rejected Plaintiffs' interpretation of CIPA: "Plaintiff should not be allowed to obliterate the distinction between a software code and a device by simply mischaracterizing, calling a software code a device. After all, words have meaning." *Moss*, 2025 WL 3452360, at *2 (dismissing Section 632 claim with prejudice on the basis that software is not a device). This Court should endorse *Moss* and reach the same result.

## III. CONCLUSION

For all of these reasons, Plaintiffs' FAC must be dismissed with prejudice.

Dated: February 17, 2026

COOLEY LLP

By: */s/ Simona Agnolucci*
Simona Agnolucci

Attorney for Defendant
Google LLC